UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IVAN ANTJUAN BURLEY,<br><br>  Plaintiff,<br><br>v.<br><br>SUMNER COUNTY 18TH JUDICIAL<br>DRUG TASK FORCE, et al.,<br><br>  Defendants. | Case No. 3:19-cv-00118<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

This action stems from the activities of the 18th Judicial District Drug Task Force,[1] an entity created by law enforcement agencies from various local governments including Sumner County, Tennessee, to aid in the investigation and prosecution of drug-related crimes. (Doc. No. 31-2.) Pro se Plaintiff Ivan Antjuan Burley alleges that, on February 8, 2016, Defendant Drug Task Force Agent Jason Arnold seized property from his residence, which is located in Davidson County, Tennessee. (Doc. No. 29.) Arnold obtained forfeiture warrants for the seized property from Defendant Sumner County Circuit Court Judge Dee David Gay on February 22, 2016. (*Id.*) In May 2018, the Davidson County Chancery Court ruled that Gay lacked the authority to issue forfeiture warrants for Burley's property because it was located in Davidson County. (*Id.*) Burley alleges that Sumner County also disregarded orders from the Davidson County Chancery Court to

---

[1] Although Burley labels the Drug Task Force the "Sumner County 18th Judicial Drug Task Force[,]" (Doc. No. 29, PageID# 123), it is properly referred to as the 18th Judicial District Drug Task Force (Doc. No. 31-2).

hold his property in safekeeping. (*Id.*) Burley, who appears *in forma pauperis*, has sued the Drug Task Force, Sumner County, Arnold, and Gay under 42 U.S.C. § 1983 asserting violation of his rights under the Fourth, Fifth, and Eighth Amendments. (*Id.*)

Two matters are now before the Court. Burley has filed an amended complaint (Doc. No. 29) that must be screened under 28 U.S.C. § 1915(e)(2), and the Drug Task Force and Sumner County have filed a motion for summary judgment (Doc. No. 30). For the reasons that follow, the Magistrate Judge will recommend that the Drug Task Force and Sumner County's motion for summary judgment be terminated without prejudice to refiling; that Burley's claims against those defendants under the Fourth and Fifth Amendments be allowed to proceed; that Burley's individual-capacity claims against Arnold and Gay under the Fourth Amendment be allowed to proceed; and that Burley's Eighth Amendment claims against all defendants be dismissed.

I. **Factual and Procedural Background**

    A. **Burley's Complaint, the Court's Initial Screening Order, and the Defendants' First Motions for Summary Judgment**

On February 5, 2019, Burley initiated this action by filing a complaint under 42 U.S.C. § 1983 against the Drug Task Force. (Doc. No. 1.) Burley's complaint contains the following allegations:[2]

---

[2] Although an amended complaint supersedes a prior complaint for all purposes, *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014), Burley's original complaint and the Court's screening of it are discussed below to provide relevant context for the pending motions. *See Estate of W. v. DeFrancisco*, No. 1:17-cv-291, 2019 WL 6792768, at *4 n.2 (S.D. Ala. Dec. 12, 2019); *Segreto v. N.Y. State Dep't of Envtl. Conservation*, No. 12-CV-1961, 2015 WL 729733, at *4 (E.D.N.Y. Feb. 18, 2015).

2

On February 8, 2016, Drug Task Force agents, acting on behalf of Sumner County, executed a search warrant at Burley's residence in Whites Creek, Tennessee. (*Id.*) The agents seized some of Burley's property and money and, on February 22, 2016, obtained three forfeiture warrants for that property from a judge of the Sumner County Circuit Court. (*Id.*) Burley challenged the forfeiture warrants in the Davidson County Chancery Court and, in May 2018, that court ruled that the Sumner County Circuit Court judge "lacked the legal authority to issue the civil forfeiture warrants." (*Id.* at PageID# 4.) Burley alleged that Sumner County then "disregarded Davidson County judicial orders to hold any evidence seized in safe keeping until further direction from Davidson County courts." (*Id.*) Although the funds that were seized were ultimately returned, they "were pivotal" to Burley's real estate business, which suffered lost earnings. (*Id.*) Burley's complaint alleged that the Drug Task Force violated his rights under the Fourth and Fifth Amendments and sought $20 million in damages for "lost potential earnings as well as pain and suffering." (*Id.* at PageID# 5.)

The Court granted Burley's application to proceed *in forma pauperis* and screened his complaint under 28 U.S.C. § 1915(e)(2). (Doc. No. 4.) The Court found that Burley's "allegations, broadly construed, suggest that the seizure [of his property] was not supported by probable cause and that the failure to maintain the seized items in safekeeping violated [his] right to due process." (*Id.* at PageID# 16.) The Court further concluded that Burley's allegations "suggest that the execution of facially invalid warrants and the failure to safeguard his property once seized, may be attributable to the Drug Task Force as a matter of policy or custom." (*Id.*) However, the Court could not determine from Burley's complaint "whether the Drug Task Force is a state agency, a municipal agency, or a suable entity created by contract with one or more municipalities" and found that Burley "would be well advised to amend his Complaint to name as defendants the

3

specific law enforcement officers in their individual capacity who he believes violated his rights." (*Id.* at PageID# 16 n.1.) Given the ambiguity of the Drug Task Force's legal status, the Court directed the Clerk of Court to issue process to the Drug Task Force's director, the Tennessee Attorney General, and Sumner County's executive. (Doc. No. 4.)

Burley quickly sought to amend his complaint through two filings, neither a full amended complaint. In the first, Burley stated his intention to add Sumner County, Arnold, and Gay as defendants. (Doc. No. 6.) In the second, Burley sought to add claims under the Eighth Amendment, alleging that the forfeiture of his property amounted to an excessive fine. (Doc. No. 10.)

On April 15, 2019, the Drug Task Force filed a motion for summary judgment, arguing that it is not a legal entity subject to suit. (Doc. Nos. 20, 21.) Sumner County also filed a motion for summary judgment, arguing that Burley's amendment-related motions were procedurally improper, that his claims are time-barred, and that he had failed to make any allegations against Sumner County. (Doc. Nos. 23, 24.) On April 24, 2019, the Court found that Burley's filings were deficient and ordered him "to file an amended complaint that complies with this Court's rules and includes his allegations and claims against all defendants and all desired relief by May 16, 2019." (Doc. No. 28, PageID# 121.)

### B. Burley's Amended Complaint

Burley filed a full amended complaint on May 23, 2019. (Doc. No. 29.) The amended complaint is nearly identical to the original complaint but adds the following allegations:

> Sumner County is to be held responsible and accountable for creating and allow[ing] to exist [a] custom th[at] enables officers and judicial members to operate without accountability[;]
>
> Arnold is to be held responsible and accountable as the lead law enforcement agent who[ ] initiated the seizure and request for the unlawful civil forfeiture against stated direct order from Davidson County courts[; and]

4

Gay is to be held responsible and accountable as the judge who[ ] ordered the illegal forfeitures.

(*Id.* at PageID# 128–29.) The amended complaint also alleges that Arnold and Gay subjected Burley to an excessive fine in violation of the Eighth Amendment by causing the forfeiture warrants to issue.[3] (Doc. No. 29.)

The amended complaint asserts the following claims under 42 U.S.C. § 1983:

- against the Drug Task Force for violation of the Fourth and Fifth Amendments;

- against Sumner County for violation of the Fourth and Fifth Amendments;

- against Arnold in his individual capacity for violation of the Fourth and Eighth Amendments; and

- against Gay in his individual capacity for violation of the Fourth and Eighth Amendments.[4]

(*Id.*)

Burley seeks $20 million in damages. (*Id.*)

---

[3] Burley alleges that his Eighth Amendment rights were violated "once officers applied for and received a forfeiture warrant." The Court construes the claim as being asserted against Arnold and Gay. (Doc. No. 29, PageID# 128.)

[4] Burley's amended complaint does not indicate whether he intends to sue Arnold and Gay in their individual or official capacities. (Doc. No. 29.) However, because Burley does not refer to either Arnold or Gay by their respective official titles, and because Burley seeks damages from them, the amended complaint is construed as asserting only individual-capacity claims against these defendants. *See Kelly v. Kulenovic*, No. 3:17-cv-01597, 2019 WL 1053647, at *3 n.5 (M.D. Tenn. Feb. 12, 2019) (construing claims against individual defendants as individual capacity claims where plaintiff had requested monetary damages, plaintiff's allegations did not refer to the defendants' official titles, and defendants had notice they were being sued in their individual capacities), *report and recommendation adopted sub nom. Kelly v. Collins*, 2019 WL 1043226 (M.D. Tenn. Mar. 5, 2019).

### C. The Defendants' Joint Motion for Summary Judgment

Sumner County and the Drug Task Force responded to Burley's amended complaint by filing a joint motion for summary judgment (Doc. No. 30), in which they repeat the arguments of their original motions (Doc. No. 31). The Drug Task Force argues that it is not a legal entity subject to suit; Sumner County argues that the amended complaint contains no allegations against it. (*Id.*) The defendants also argue that Burley's claims are time-barred under the applicable statute of limitations. (*Id.*) In support of their motion, the defendants filed the Drug Task Force's bylaws (Doc. No. 31-2) and a declaration from the chief deputy of the Sumner County Sheriff's Office stating that neither Arnold nor Gay is an employee of Sumner County (Doc. No. 31-1). The defendants also filed a statement of undisputed material facts, which contains only the following four assertions:

1. The events that allegedly violated [Burley's] civil rights occurred in February 2016.

    \*    \*    \*

2. [Burley's] Amended Complaint does not state what alleged Sumner County custom or policy allegedly violated [his] civil rights.

    \*    \*    \*

3. Neither Officer Arnold nor Gay are employees of Sumner County.

    \*    \*    \*

4. The [Drug Task Force] is not a legal entity and therefore cannot be sued.

(Doc. No. 32, PageID# 152–53 (citations omitted).)

Burley responded in opposition to the defendants' motion, but not to their statement of undisputed material facts. (Doc. No. 34.) Burley argues that the Drug Task Force is able to enter into contracts, purchase and hold real property, and pay debts and therefore "operates very much as a legal entity." (*Id.* at PageID# 158.) With respect to Sumner County, Burley argues that there

6

is a custom that allows the misconduct of the Drug Task Force's officers "to take place undeterred within the county." (*Id.* at PageID# 157.) Burley also argues that, although Arnold and Gay may not be employed directly by the county, their misconduct "is made possible due to the authorization of both the [Drug Task Force] and Sumner County." (*Id.* at PageID# 158.) Finally, Burley argues that, on April 30, 2019, Arnold again illegally seized funds located in Davidson County based on a Sumner County warrant. (Doc. No. 34.)

On November 5, 2019, the Court found the defendants' first motions for summary judgment moot. (Doc. No. 35.) The Court also noted that Burley had not responded to the defendants' statement of undisputed material facts and gave him until December 3, 2019, to do so. (*Id.*) On that date, Burley filed another response in opposition to the defendants' motion for summary judgment that reiterates his original arguments and does not respond directly to the statement of undisputed material facts. (Doc. No. 36.) Burley also argues that his claims are timely because they did not accrue "until the [Davidson County Chancery Court's May 2018] ruling that the issuing court lacked authority to issue the warrants which called for the seizure of [his] property." (*Id.* at PageID# 165.)

The defendants filed a reply that does not respond to any of Burley's arguments. (Doc. No. 39.) Instead, the defendants point out that Burley failed to properly respond to their statement of undisputed material facts and ask the Court to accept those facts as true in ruling on their motion, consistent with Local Rule 56.01(f). (*Id.*); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a moving party's statement of material facts . . . is not filed . . . the asserted facts shall be deemed undisputed for purposes of summary judgment.").

7

**II.     Analysis**

   **A.     The Defendants' Joint Motion for Summary Judgment**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

The defendants are correct that Burley did not respond to their statement of undisputed material facts and that they must be taken as true for purposes of the motion for summary judgment. But that circumstance, by itself, does not entitle them to summary judgment. "[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact." *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991). The moving party bears this burden even "if an adverse party fails to respond." *Id.* at 455. "In other words, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded" and must instead "examine the movant's motion for summary judgment to ensure that [the movant] has discharged [its initial] burden." *Id.*

The defendants have not discharged that burden here. The arguments made in their memorandum of law barely exceed one page, cite almost no legal authority, and fail to explain the materiality of any of the limited evidence on which they rely. They have not filed a properly supported motion for summary judgment. *See* M.D. Tenn. R. 7.01(a)(2) (motion and supporting memorandum) (providing that "every motion that may require the resolution of an issue of law must be accompanied by a separately filed memorandum of law citing supporting authorities . . ."). And, even taking their four asserted material facts as true, they have not shown they are entitled

to judgment as a matter of law. Accordingly, the Magistrate Judge will recommend that the defendants' motion be terminated without prejudice to refiling in compliance with this Court's Local Rules and the Federal Rules of Civil Procedure.

1. **The Legal Status of the Drug Task Force**

The Drug Task Force has not shown that it is entitled to summary judgment because it is an entity that cannot be sued. The Drug Task Force supports that argument only with its bylaws, which state that "[n]othing contained in the Interlocal Cooperation Agreement of the 18th Judicial District Drug Task force, or [its] [b]ylaws . . . , is to create a separate legal entity in the 18th Judicial District Drug Task Force." (Doc. No. 31, PageID# 137–38 (quoting Doc. No. 31-2).) But, under Tennessee law, whether an interlocal drug task force is subject to suit is not determined by its bylaws alone.

Federal courts look to Tennessee law to determine whether Tennessee drug task forces are subject to suit under 42 U.S.C. § 1983. *See Rhea v. Brown*, No. 2:17-2267, 2019 WL 7756068, at *3–4 (W.D. Tenn. Oct. 17, 2019); *Lamb v. Tenth Judicial Dist. Drug Task Force*, 944 F. Supp. 2d 586, 595 (E.D. Tenn. 2013); *see also* Fed. R. Civ. P. 17(b)(3) (providing that, for parties other than individuals and corporations, capacity to be sued is determined "by the law of the state where the court is located"). Interlocal drug task forces under Tennessee's Interlocal Cooperation Act, Tenn. Code Ann. §§ 12-9-101–12-9-112, which enables local governmental units "to cooperate with other localities on a basis of mutual advantage . . ." in providing services and facilities. *Id.* § 12-9-102. The statute requires that any such agreement state "[t]he precise organization, composition and nature of any separate legal or administrative entity or entities created . . . ." *Id.* § 12-9-104(c)(2). The statute also sets requirements for interlocal agreements that do not establish a separate legal entity. *Id.* § 12-9-104(d). Thus, it is the interlocal agreement that creates a drug task force and defines its legal status. *See Rhea*, 2019 WL 7756068, at *4; *Timberlake ex rel.*

10

*Timberlake v. Benton*, 786 F. Supp. 676, 682–83 (M.D. Tenn. 1992). The Drug Task Force's bylaws alone are not sufficient proof from which to determine as a matter of law whether it is subject to suit and it is not entitled to judgment as a matter of law on this ground. *See Lamb*, 944 F. Supp. 2d at 595 (finding that drug task force's capacity to be sued could not be decided where the court had access to a partial version of the force's bylaws and policy manuals but not the interlocal agreement itself).

### 2. The Timeliness of Burley's Claims

Because failure to bring suit within the statute of limitations is an affirmative defense, it is the defendants' burden to demonstrate that Burley's claims are time-barred. *See Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). Here, the defendants point to the one-year statute of limitations for civil rights actions and argue that it had long expired when Burley brought this action in 2019 challenging the seizure of his property on February 8, 2016. (Doc. No. 31.)

The defendants are correct that a one-year statute of limitations applies to Burley's claims. *See Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); Tenn. Code Ann. § 28–3–104(a)(1). But Burley argues that the statute of limitations did not begin to run on the date his property was seized. Instead, he argues that he did not know he had been injured until the Davidson County Chancery Court found the warrants used to forfeit his property invalid.

The date a claim accrues is not necessarily determined by when the injury occurred. Rather, "[t]he statute of limitations commences to run when the plaintiff *knows or has reason to know* of the injury which is the basis of his action." *Hughes*, 215 F.3d at 548 (emphasis added). Considering constitutional claims arising out of the forfeiture of property, this Court has previously found that the claims accrued when the plaintiff concluded a state-court challenge to the forfeiture, not when the property was seized. *See Hill v. Tennessee*, 868 F. Supp. 221, 224 (M.D. Tenn. 1994). The

11

defendants do not offer any argument as to when Burley's claims accrued or address this relevant precedent. They have therefore failed to meet their burden of establishing the untimeliness of Burley's claims. *See Manuele v. City of Springfield*, 718 F. Supp. 2d 939, 946 (C.D. Ill. 2010) ("Defendant's bare-bones, undeveloped argument does not sustain Defendant's initial burden of demonstrating that there is no genuine issue of material fact for trial with respect to the statute of limitations."). Their motion for summary judgment on this ground fails.

### 3. Burley's Allegations Against Sumner County

Finally, Sumner County has failed to show that it is entitled to summary judgment on the merits of Burley's claims. Sumner County argues that Burley's amended complaint contains no substantive allegations against it and concludes that Burley has failed "to state a claim for which relief may be granted." (Doc. No. 31, PageID# 137.) That standard governs a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), not a motion for summary judgment. Regardless, Sumner County's argument ignores relevant allegations of the amended complaint and this Court's duty to liberally construe them. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

As the Court explained in its initial screening order, Burley can maintain a claim against Sumner County by demonstrating that the municipality violated his federal rights through (1) an illegal official policy or legislative enactment; (2) the final decision of an official with final decision making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Burley alleges that "Sumner County disregarded direct orders from Davidson County to hold any evidence seized in safe keeping until further notice and direction from Davidson County courts." (Doc. No. 29, PageID# 125.) That is the basis of his claim that Sumner County violated his right to due process. Burley also alleges that "Sumner County is to be held responsible and accountable for creating and allow[ing] to exist [a] custom th[at] enables

12

officers and judicial members to operate without accountability." (*Id.* at PageID# 128.) Construed with the other allegations of the amended complaint, Burley claims that Sumner County has a custom of allowing Drug Task Force agents like Arnold to use invalid warrants to seize property in violation of the Fourth Amendment.[5] Sumner County wrongly reduces Burley's amended complaint to the "bare assertion that some Sumner County[ ] unnamed 'custom' lead [*sic*] to the alleged violation of [his] civil rights" and does not address his claim that it disregarded the Davidson County Chancery Court's order. Sumner County thus fails to meet its initial burden of demonstrating that it is entitled to judgment as a matter of law.[6] (Doc. No. 31, PageID# 137.)

### B. Screening Burley's Amended Complaint

Under 28 U.S.C. § 1915(e)(2), the Court is obligated to dismiss this case "at any time" if it determines that Burley has failed "to state claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii). The standard for reviewing whether Burley's amended complaint fails to state a claim under § 1915(e)(2) is the same as the standard for evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal

---

[5] Burley identifies one other instance of Arnold wrongfully seizing property in Davidson County on the basis of an invalid warrant, alleging that such a seizure took place on April 30, 2019. (Doc. No. 36.)

[6] In a footnote, Sumner County states that neither Arnold nor Gay are employed by Sumner County, citing the declaration of Aaron Pickard. (Doc. Nos. 31, 31-1.) However, Sumner County neither explains the materiality of that fact nor responds to Burley's argument that Sumner County "enlisted the services of the officers and the joint task force giving authorization for officers to conduct operations within [Sumner County's] borders." (Doc. No. 36, PageID# 166.)

Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Burley proceeds pro se, the Court construes his filings "liberally" and holds his amended complaint "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94. There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### 1. Claims Against the Drug Task Force and Sumner County

In screening Burley's original complaint, the Court found that Burley's allegations, liberally construed, suggested that the Drug Task Force had a policy or custom of seizing property based on invalid warrants in violation of the Fourth Amendment and of failing to safely store seized property in violation of the Fifth Amendment. (Doc. No. 4.) The amended complaint's

allegations are largely identical to those of the original complaint, and this conclusion thus applies with equal force. Further, given the uncertainty that persists regarding the Drug Task Force's capacity to be sued, the amended complaint states colorable Fourth and Fifth Amendment claims against Sumner County, which, as one of the municipal entities that the Drug Task Force represents, would be subject to suit if the Drug Task Force is not. *See Lamb*, 944 F. Supp. 2d at 594 (finding that, when a law enforcement agency is an inappropriate defendant under § 1983, "the municipality the agency represents should be sued").

### 2. Fourth Amendment Claims Against Arnold and Gay

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002). That protection also extends to forfeitures. *Austin v. United States*, 509 U.S. 602, 608 n.4 (1993) ("[T]he Fourth Amendment's protection against unreasonable searches and seizures applies in forfeiture proceedings . . . ."). Typically, a seizure of personal property without a warrant is unreasonable under the Fourth Amendment. *Farm Labor Org. Comm.*, 308 F.3d at 543 (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). In Tennessee, a law enforcement officer can seize property for forfeiture "prior to the issuance of a forfeiture warrant." *State v. Sprunger*, 458 S.W.3d 482, 495 (Tenn. 2015) (citing Tenn. Code Ann. § 40-33-203). But, after the initial seizure, the seizing officer must apply to the "appropriate court" for a forfeiture warrant. *Id.* at 496.

Here, Burley has not challenged the initial seizure of his property during the execution of the search warrant; rather, he alleges that the continued seizure of that property violated the Fourth Amendment because it was done pursuant to a warrant issued by a court without jurisdiction. The Sixth Circuit has held that "[s]tate law determines what person is allowed to approve what warrant." *United States v. Master*, 614 F.3d 236, 240 (6th Cir. 2010). "[W]hen a warrant is signed

15

by someone who lacks the legal authority necessary to issue [it], the warrant is void *ab initio.*" *Id.* at 239 (citation omitted); *see also Godboldo v. Cty. of Wayne*, 686 F. App'x 335, 342 (6th Cir. 2017) ("[T]he person signing a warrant must . . . be authorized by state law to do so." (citing *Master*, 614 F.3d at 240)). In Tennessee, the jurisdiction of a circuit court judge is typically confined to the geographical boundaries of the judge's district. *State v. Frazier*, 558 S.W.3d 145, 151 (Tenn. 2018) (holding that "the geographical jurisdiction of a circuit court judge [is limited] to the judge's statutorily defined and assigned judicial district" and therefore such a judge can "exercise 'the jurisdiction of [another] trial court' only by 'interchange, appointment, or designation,' or 'other lawful ground'"). According to Burley's amended complaint, the Davidson County Chancery Court found that Sumner County Circuit Gay lacked jurisdiction to issue a forfeiture warrant for Burley's property in Davidson County. By alleging that Arnold effected the seizure of his property based on a warrant from a judge who lacked authority under state law to issue it, Burley has stated a colorable Fourth Amendment claim against Arnold in his individual capacity for purposes of screening.[7] *See Master*, 614 F.3d at 241 (holding that search violated the Fourth Amendment where it was conducted pursuant to a warrant issued by a judge who lacked jurisdiction under Tennessee law to issue the warrant).

---

[7] Law enforcement "officers are entitled 'to rely on a judicially secured warrant for immunity from a § 1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable.'" *McCutchen v. Tipton Cty.*, 430 F. Supp. 2d 741, 747 (W.D. Tenn. 2006) (quoting *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)). However, because qualified immunity is a fact-driven inquiry that is normally undertaken at the summary judgment stage, *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 899 (6th Cir. 2019), the question of whether it was unreasonable for Arnold to obtain and rely on the warrants issued by Gay exceeds the scope of this screening under 28 U.S.C. § 1915(e)(2). *See Evans v. Washington*, No. 1:19-cv-953, 2019 WL 6974735, at *7 (W.D. Mich. Dec. 20, 2019) (declining to address qualified immunity at the screening stage).

In screening Burley's claims against Gay, the Court must consider whether judicial immunity will bar those claims. *See Smith v. Shelby Cty.*, 3 F. App'x 436, 437–38 (6th Cir. 2001) (holding that it was proper for district court to sua sponte consider defenses of quasi-judicial and prosecutorial immunity under 28 U.S.C. § 1915(e)(2) and 1915A because those statutes expressly contemplate "sua sponte dismissal of claims . . . barred by immunity . . ."). "It is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages." *Bright v. Gallia Cty.*, 753 F.3d 639, 648 (6th Cir. 2014) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)). Judicial immunity exists "for the benefit of the public, whose interest it is that . . . judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* at 649 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). There are two exceptions to judicial immunity: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). "[O]nly in the absence of subject matter jurisdiction are judicial actors devoid of the shield of immunity." *Id.* (quoting *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000) (en banc)).

Although Gay was clearly acting in a judicial capacity when he issued forfeiture warrants for Burley's property in Davidson County, Burley has alleged that he acted without jurisdiction by doing so. Burley has therefore alleged sufficient facts for his claims against Gay to proceed through screening. *See Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1988) (holding that the court was not aware of "any case in which a judge who had exercised authority outside the territory properly within his jurisdiction was nevertheless held to be entitled to judicial immunity"); *see also Frazier*, 558 S.W.3d at 155 (holding that judge of Tennessee's 23rd Judicial District "exceeded the

geographical jurisdiction granted him by Tennessee law when he issued search warrants for the defendants' residences in the 19th Judicial District" and that issuance of such warrants was not merely "an inadvertent, clerical, or technical error").

### 3. Eighth Amendment Claims Against Arnold and Gay

The Eighth Amendment prohibits imposition of "excessive fines[,]" U.S. Const. amend. VIII, and applies to the States through the Fourteenth Amendment, *Timbs v. Indiana*, 139 S. Ct. 682, 686–87 (2019). A fine is "'a payment to a sovereign as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 327 (1998) (quoting *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265 (1989)). Accordingly, a forfeiture only constitutes a "fine[ ]" if it is imposed as punishment for some offense; a purely remedial forfeiture does not implicate the Eighth Amendment. *Id.* at 328. A punitive forfeiture is excessive, and thus violates the Eighth Amendment, "'if it is *grossly disproportionate* to the gravity of a defendant's offense.'" *Ross v. Duggan*, 402 F.3d 575, 588 (6th Cir. 2004) (emphasis in original) (quoting *Bajakajian*, 524 U.S. at 334). Factors relevant to the proportionality analysis "'include the nature of the offense and its relation to other criminal activity, the potential fine under the advisory Guidelines range, the maximum sentence and fine that could be imposed, and the harm cause[d] by the defendant's conduct.'" *Zynda v. Arwood*, 175 F. Supp. 3d 791, 810–11 (E.D. Mich. 2016) (quoting *United States v. Parenteau*, 805 F. Supp. 2d 438, 444 (S.D. Ohio 2011)).

Here, the complete absence of any allegations concerning the nature of the forfeiture of Burley's property is fatal to his Eighth Amendment claims. Burley has not alleged why his property was subject to forfeiture and the Court therefore cannot conclude that the property was taken as punishment for some offense. *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 774 F. App'x 959, 967 (6th Cir. 2019) (holding that the threshold question for an excessive fines claim is "whether the fines are punitive or remedial in nature"). Even assuming that the forfeiture was punitive, Burley

has not alleged the value of the forfeited property that was forfeited or the offense that the forfeiture sought to punish. Those allegations are necessary to state an Eighth Amendment excessive fine claim. *See Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 200 (S.D.N.Y. 2019) ("With no allegation as to the amount of fines actually paid by [plaintiff], it is not possible to undertake the four-factor analysis of whether his fines were 'grossly disproportional' to the underlying offense and therefore a plausible violation of the Eighth Amendment."). Burley's Eighth Amendment claims must therefore be dismissed.

### III. Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the defendants' motion for summary judgment (Doc. No. 30) be terminated without prejudice to refiling after all defendants have appeared. Having screened Burley's amended complaint, the Magistrate Judge RECOMMENDS that Burley's claims against the Drug Task Force and Sumner County for violation of his rights under the Fourth and Fifth Amendment be allowed to proceed; that Burley's claims against Arnold and Gay in their individual capacities for violation of Burley's rights under the Fourth Amendment be allowed to proceed and that Burley's Eighth Amendment claims be dismissed; and that process issue to Arnold and Gay.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of February, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge