UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IVAN ANTJUAN BURLEY,<br><br>     Plaintiff,<br><br>v.<br><br>SUMNER COUNTY 18TH JUDICIAL<br>DISTRICT DRUG TASK FORCE et al.,<br><br>     Defendants. | Case No. 3:19-cv-00118<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable William L. Campbell, Jr., District Judge

## **REPORT AND RECOMMENDATION**

Pro se Plaintiff Ivan Antjuan Burley brings this action under 42 U.S.C. § 1983 alleging that Defendants the 18th Judicial District Drug Task Force (Drug Task Force)[1] and Sumner County, Tennessee, violated his rights under the Fourth and Fifth Amendments by seizing his property unlawfully. (Doc. No. 29.) The parties filed cross-motions for summary judgment that the Court addresses jointly in this Report and Recommendation. (Doc. Nos. 89, 94.) For the reasons that follow, the Magistrate Judge will recommend that the Drug Task Force and Sumner County's motion for summary judgment (Doc. No. 89) be granted and Burley's motion be denied (Doc. No. 94).

---

[1]    Burley refers to the Drug Task Force as the "Sumner County 18th Judicial Drug Task Force[.]" (Doc. No. 29, PageID# 123.) The defendants have clarified that it is properly referred to as the 18th Judicial District Drug Task Force. (Doc. No. 31-2.)

## I. Background

### A. Factual Background[2]

In October 2015, Drug Task Force agents received a complaint from a UPS Store in Hendersonville, Tennessee—located in Sumner County—about a package the store received that was addressed to Burley's P.O. box. (Doc. No. 90-1.) Drug Task Force agents investigated and, on February 5, 2016, obtained warrants from a Davidson County, Tennessee, General Sessions Court judge to search Burley's home and two storage units located in Davidson County. (*Id.*) The warrants ordered that the officers "seize the evidence and safe keep the same in Sumner County, Tennessee, pending further orders of this Court." (*Id.* at PageID# 486.) Three days later, Drug Task Force agents executed the warrants and seized money, cars, and other items from the subject locations. (Doc. No. 90-1.) Burley was arrested on a Sumner County warrant for possession of cocaine for resale within a drug-free school zone in Davidson County. (*Id.*) On February 22, 2016, a Sumner County Circuit Court judge issued three forfeiture warrants for the seized property. (*Id.*)

Burley challenged the forfeiture warrants before an Administrative Law Judge (ALJ) who granted Burley's motion to dismiss on the grounds that the Sumner County Circuit Court judge lacked jurisdiction to issue the forfeiture warrant. (*Id.*) The Tennessee Department of Safety appealed, and the order was reversed and remanded for a contested-case hearing on the merits. (*Id.*) Following a hearing, the ALJ ordered that all of the seized property except Burley's truck be forfeited to the Tennessee Department of Safety. (*Id.*) Burley filed a petition for review, and, on April 10, 2018, the Davidson County Chancery Court ruled that the Sumner County Circuit Court lacked authority to issue the forfeiture warrants because it did not have jurisdiction to issue

---

[2]     These facts are taken primarily from the Drug Task Force and Sumner County's statement of undisputed material facts (Doc. No. 91) and the exhibits filed in support of their motion for summary judgment (Doc. No. 90–1–90–4).

forfeiture warrants for property located in Davidson County and ordered that Burley's property be returned to him. (*Id.*) Neither the Drug Task Force nor Sumner County was a party to that action. (Doc. No. 91, ¶¶ 8, 9.) Burley's lawyer contacted the Drug Task Force on May 21, May 22, and May 29, 2018, regarding return of Burley's property. (Doc. No. 90-2, ¶¶ 6–8.) The property was returned to Burley on June 5, 2018. (Doc. No. 91 at ¶ 9.)

Burley's amended complaint, which is not verified, alleges generally that Drug Task Force Agent Jason Arnold "and others" seized his property and obtained forfeiture warrants from a judge who lacked the authority to issue them. (Doc. No. 29, PageID# 125.) Burley further alleges that Sumner County disregarded the Davidson County court's order to hold Burley's property in safekeeping pending further order. (Doc. No. 29.) Burley states that "[t]he funds that were seized and ultimately returned were instrumental and necessary in the functioning of my real estate business. A tremendous loss was incurred as a result." (*Id.* at PageID# 125.) In an addendum to these allegations, Burley alleges that the Drug Task Force "subjected him to [an] undue and unjust excessive fine" by obtaining forfeiture warrants for his property. (*Id.* at PageID# 128.) Finally, Burley states that "Sumner County is to be held responsible and accountable for creating and allow[ing] to exist [a] custom [that] enables officers and judicial members to operate without accountability." (*Id.*).

## B. Procedural Background

Burley initiated this action by filing a complaint under 42 U.S.C. § 1983 against the Drug Task Force. (Doc. No. 1.) The Court granted Burley's application to proceed *in forma pauperis* and screened the complaint under 28 U.S.C. § 1915(e)(2), allowing his Fourth and Fifth Amendment claims against the Drug Task Force to proceed. (Doc. No. 4.) Burley then filed an amended complaint that added claims under the Eighth Amendment and Sumner County, Arnold, and Sumner County Circuit Court Judge Dee David Gay as defendants. (Doc. No. 29.) Soon after,

the Drug Task Force and Sumner County filed a joint motion for summary judgment. (Doc. No. 30.) The Court found that the Drug Task Force and Sumner County's motion was procedurally improper and terminated the motion without prejudice to refiling. (Doc. Nos. 40, 41.) The Court also screened the amended complaint's newly asserted claims under 28 U.S.C. § 1915(e)(2), allowing Burley's Fourth Amendment claims against Arnold and Gay in their individual capacities and Fourth and Fifth Amendment claims against the Drug Task Force and Sumner County to proceed and dismissing Burley's Eighth Amendment claims. (*Id.*) Gay filed a motion for summary judgment (Doc. No. 48) and Arnold filed a motion to dismiss (Doc. No. 50), which the Court granted (Doc. Nos. 58, 59).

On June 3, 2022, the Drug Task Force and Sumner County filed a second joint motion for summary judgment (Doc. No. 89), supported by a memorandum of law (Doc. No. 90), a statement of undisputed material facts (Doc. No. 91), and exhibits (Doc. Nos. 90-1–90-4). Burley responded in opposition to the motion (Doc. No. 99) and responded to the accompanying statement of undisputed material facts (Doc. No. 98). The Drug Task Force and Sumner County filed a reply, arguing that, because Burley did not support his responses to their statement of undisputed material fact with citations of the record, as Federal Rule of Civil Procedure 56(c) and this Court's Local Rules require, the Court should "consider its facts undisputed and grant summary judgment in Defendants' favor." (Doc. No. 101, PageID# 620).

Burley then filed his own motion for summary judgment, supported by a memorandum of law and exhibits. (Doc. No. 94). Burley did not file a statement of undisputed material facts. The Drug Task Force and Sumner County responded in opposition to Burley's summary judgment motion. (Doc. No. 100.) Burley did not file an optional reply.

## II.      Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

5

Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

Where, as here, the parties have filed cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## III.     Analysis

### A.     Local Rule 56.01 and the Moving Party's Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 addresses motions for summary judgment and provides that any such motion "must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Local Rule 56.01(b) exists "'to prevent parties from unfairly shifting the burdens of litigation to the court[,]'" *Matthews v. Copeland*, 286 F. Supp. 3d 912, 916 (M.D. Tenn. 2017) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)), and to ensure that a party facing a motion for summary judgment has adequate notice of and an opportunity to respond to the movant's claim that certain facts are undisputed. "Each fact must be set forth in a separate, numbered paragraph . . . [and] be supported by specific citation to the record." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). "The

requirement that a statement of undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties." *Id.*; *see also Matthews*, 286 F. Supp. 3d at 915 (finding that "'it is incumbent upon litigants, even those proceeding *pro se*, to follow the . . . rules of procedure,' and this includes 'local and state court rules'" (alteration in original) (quoting *Fields v. Cty. of Lapeer*, No. 99-2191, 2000 WL 1720727, at \*2 (6th Cir. Nov. 8, 2000))). A party opposing a motion for summary judgment must respond to each asserted undisputed fact by "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (1)–(3) (response to statement of facts). Pro se parties also must follow this requirement. M.D. Tenn. R. 56.01(c).

The Drug Task Force and Sumner County filed a statement of undisputed material facts that complies with the requirements of Local Rule 56.01(b) and supports the asserted undisputed facts with citations to the summary-judgment record. (Doc. No. 91.) Burley's response to that statement does not include any record citations to support his position that certain facts are disputed. (Doc. No. 98.) Thus, Burley did not comply with Local Rule 56.01(c). M.D. Tenn. R. 56.01(c)(3).

The Drug Task Force and Sumner County argue that Burley's failure to properly respond to their statement of undisputed material facts requires the Court to consider their facts undisputed and to grant summary judgment in their favor. (Doc. No. 101.) While Local Rule 56.01(f) requires the Court to consider an asserted undisputed fact to which no adequate response has been given to be established for purposes of the summary judgment motion, *see* M.D. Tenn. R. 56.01(f) (failure to respond), the conclusion that a grant of summary judgment is therefore warranted does not

automatically follow. Burley's failure to support his response to the Drug Task Force and Sumner County's statement of undisputed material facts with record citations does not lessen the defendants' initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2022). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022) ("If the movant

fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that the Drug Task Force and Sumner County have offered in support of their motion to determine if it is sufficient to satisfy their initial summary judgment burden with respect to each of Burley's claims before evaluating Burley's response in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *see also Nissan Fire & Marine Ins. Cos. v. Fritz Co.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim—timely notice—but . . . d[id] not actually do so"). Under Rule 56(c)(3), the Court may also consider other materials in the record in its review, although it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

Burley's motion for summary judgment is not accompanied by a statement of undisputed material facts (Doc. No. 94) and thus does not comply with the Court's Local Rules. For that reason, the Magistrate Judge will recommend that it be terminated.

### B. The Legal Status of the Drug Task Force

The Drug Task Force argues that it is not a legal entity that can be sued in federal court. (Doc. No. 90.) Federal Rule of Civil Procedure 17(b) addresses the capacity to sue or be sued and states that, for entities other than individuals and corporations, capacity is determined "by the law

of the state where the court is located[.]" Fed R. Civ. P. 17(b)(3). "[A] partnership or other unincorporated association" that cannot be sued under state law, however, may still be subject to suit in federal court if it is "sued in its common name to enforce a substantive right existing under the United States Constitution or laws[.]" Fed. R. Civ. P. 17(b)(3)(A). Following Rule 17(b), the Court will consider, first, whether the Drug Task Force can be sued under Tennessee law and, if it cannot, whether the Drug Task Force is subject to suit in federal court under the exception provided in Rule 17(b)(3)(A).

### 1. Capacity to be Sued Under Tennessee Law

The Drug Task Force was formed under the authority of Tennessee's Interlocal Cooperation Act, which provides that "[a]ny power . . . exercised . . . by a public agency of this state . . . may be exercised and enjoyed jointly with any other public agency of this state having the [same] power . . . ." Tenn. Code Ann. § 12-9-104(a)(1). The Act thus allows "any two or more public agencies or municipalities" to "enter into agreements for joint cooperation." *Timberlake ex. rel .Timberlake v. Benton*, 786 F. Supp. 676, 682 (M.D. Tenn. 1992). "In so doing, they may, but need not, create a separate legal entity." *Id.*; *see also Lamb v. Tenth Jud. Dist. Drug Task Force*, 944 F. Supp. 2d 586, 593 (E.D. Tenn. 2013) ("The provisions of Tenn. Code Ann. § 12–9–104 provide local governments broad discretion to construct entities and to determine the composition and legal status of those entities."). If the parties intend to create a separate entity, their agreement must state "[t]he precise organization, composition, and nature of any separate legal or administrative entity or entities created thereby[.]" Tenn. Code Ann. § 12-9-104(c)(2). "In the event that the agreement does not establish a separate legal entity or entities to conduct the joint or cooperative undertaking," the agreement must include a "[p]rovision for an administrator or a joint board responsible for administering the joint or cooperative undertaking . . . ." and state "[t]he manner of acquiring, holding and disposing of real and personal property used in the joint or

cooperative undertaking." *Id.* § 12-9-104(d)(1)–(2);  *see also Timberlake*, 786 F. Supp. at 683 n.2 (noting that interlocal agreements that do not create a separate legal entity must form a joint board and address the possession of property).

The Drug Task Force provides two agreements as exhibits in support of its summary judgment motion. (Doc. Nos. 90-3, 90-4.) To support its argument that it is not an independent legal entity, the Drug Task Force relies on a memorandum of understanding entered into between the "18th Judicial Drug Task Force" and the Sumner County Sheriff's Office (the MOU). (Doc. No. 90-4.) Specifically, the Drug Task Force points to a provision in the MOU stating that "[t]his 'Inter-Agency Agreement' will NOT be interpreted to create a legal entity." (*Id.* at PageID# 521.) The MOU, however, is not the agreement that created the Drug Task Force under Tenn. Code Ann. § 12-9-104, and its terms do not define the Drug Task Force's legal status. The MOU is, it appears, an agreement between the Drug Task Force and Sumner County. Its statement that it does not create a legal entity thus does not define the Drug Task Force's status under Tennessee Law.

However, the Drug Task Force has also provided an Interlocal Cooperation Agreement (the Interlocal Agreement) which establishes the 18th Judicial District Drug and Violent Crimes Task Force as authorized by Tenn. Code Ann. §§ 12-9-101, *et seq*. (Doc. No. 90-3.) The Interlocal Agreement states that, under its terms and as authorized by Tennessee law, any law-enforcement officer, district attorney general, or designee assigned to a drug task force may "enforce the laws of the State of Tennessee related to the investigation and prosecution of but not limited to drug and violent crime cases by conferring the same rights, powers, duties and immunities in every jurisdiction within the judicial district as such officer has within the officer's own jurisdiction[.]" (*Id.* at PageID# 510.) The Interlocal Agreement does not state that it establishes a separate legal entity. (Doc. No. 90-3.) It provides that the Drug Task Force "shall be governed by the Board of

Directors," comprised of "the chief law enforcement officer for each city and/or county within the 18th Judicial District that is a party to this [a]greement" and responsible "for the overall policies and direction of" the Drug Task Force. (*Id.* at PageID# 510–511.) The Interlocal Agreement also states that the Drug Task Force "shall have the authority to maintain control over personal and real property" and sets out how such property may be acquired and disposed of by the Drug Task Force. (*Id.* at PageID# 514.)

The Interlocal Agreement meets the statutory requirements established under Tenn. Code Ann. § 12-9-104(d) for a joint agreement that "does not establish a separate legal entity . . . ." It provides for "a joint board responsible for administering the joint or cooperative undertaking" on which "public agencies party to the agreement [are] represented[,]" Tenn. Code Ann. § 12-9-104(d)(1), and addresses "[t]he manner of acquiring, holding, and disposing of real and personal property used in the joint or cooperative undertaking[,]"*id.* § 12-9-104(d)(2). Although the Interlocal Agreement does not explicitly address the Drug Task Force's legal status, it directs that conclusion by meeting all of the statutory requirements for an agreement that does not establish a separate legal entity under Tennessee law.

### 2. Capacity to be Sued Under Fed. R. Civ. P. 17(b)(3)(A)

Because the Drug Task Force cannot be sued under Tennessee law, the Court must next consider whether it is "a partnership or other unincorporated association" that is "sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). The second part of the question is easily answered in the affirmative. Burley is suing the Drug Task Force to enforce his substantive rights under the Fourth and Fifth Amendments to the United States Constitution through the federal civil rights statute, 42 U.S.C. § 1983. *See, e.g.*, *Bowles v. City of Mansfield*, No. 1:07-CV-2276, 2009 WL 6903813 (N.D. Ohio July 10, 2009), *report and recommendation adopted as modified*, 2010 WL 3860938 (N.D. Ohio

Sept. 30, 2010) (finding that § 1983 action alleging Fourth Amendment and Fourteen Amendment violations was a suit to enforce a substantive right existing under the United States Constitution or laws).

Whether the Drug Task Force is a "partnership or other unincorporated association" as those terms are used in the Rule 17(b) exception requires more consideration. Where "a federal substantive right is claimed, federal courts must apply federal and not state law in determining what constitutes an unincorporated association for capacity purposes." *Associated Students of Univ. of Cal. at Riverside v. Kleindienst*, 60 F.R.D. 65, 67 (C.D. Cal. 1973). Under federal authority, "'[u]nincorporated association' is a term of art—every group that is not a corporation or partnership is not automatically an unincorporated association." *Brown v. Fifth Jud. Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001) (quoting *Roby v. The Corp. of Lloyd's*, 796 F.Supp. 103, 109–10 (S.D.N.Y. 1992)). The "unincorporated association" provision of Rule 17(b) "had its origin in the 1922 Supreme Court decision in *United Mineworkers of America v. Coronado Coal Company*, [259 U.S. 344 (1922),] in which the Court held that a claim under the Sherman Antitrust Act properly was brought against a labor union as an entity" even though "state law would have precluded a similar action in the local courts under the common-law rule regarding the capacity of unincorporated associations.". 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1564 (3d ed. updated Apr. 2022). "The weight of later authority tended to confine the Court's holding to cases involving defendant organizations, such as labor unions, whose existence was recognized implicitly by federal legislation." *Id.*; *see, e.g.*, *U.S. & Cuban Allied Works Eng'g Corp. v. Lloyds*, 291 F. 889, 892–93 (S.D.N.Y. 1923) (finding that *Coronado* "did not effect a general change in the status of [unincorporated] associations; rather, it turned upon the character

13

of a trade union as such, especially because of its repeated recognition in statutes of the United States as an entity").

Following *Coronado*, federal courts have generally defined an unincorporated association for purposes of Rule 17(b) as "a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise." *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1222 (5th Cir. 1969). *See also S. Cal. Darts Assn v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014) (defining unincorporated association as "'a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective'") (quoting *Comm. For Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996)). Courts have found that definition to include labor unions and a wide variety of other private organizations. *See Penrod Drilling Co.*, 414 F.2d at 1222 (including "agricultural societies, co-ops, banking associations, charitable associations, news associations, and religious societies"); *Yonce v. Miners Mem'l Hosp. Assoc.*, 161 F. Supp. 178, 186 (W.D. Va. 1958) (finding a similar definition to include "trade unions, fraternal organizations, business organizations, and the like"). Courts have generally excepted public entities from this definition, reasoning that "[n]othing in the language of Rule 17(b) or in the early case law that led to the adoption of Rule 17 . . . warrants an extension of Rule 17(b) to government units. Also, nothing in the advisory committee notes to Rule 17 or in the case law interpreting and applying Rule 17 has ever extended this 'unincorporated association' exception to government units, subdivisions, or agencies." *Dean v. Barber*, 951 F.2d 1210, 1215 n.4 (11th Cir. 1992); *see also Erie Hum. Rels. Comm. v. Tullio*, 493 F.2d 371, 376 (3d Cir. 1974) (Adams, J. concurring) ("It would appear from the background of Rule 17(b) that the relaxation of the requirement that an organization have 'capacity (under state

14

law) to sue' was designed to permit private entities that are well-established representatives of groups of people with common social and economic concerns to sue or be sued.").

Authorities addressing whether drug task forces are unincorporated associations under Rule 17(b) "appear to be uniform in holding that [they] . . . are not separate legal entities subject to suit" when they are publicly constituted. *Brown v. Fifth Jud. Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001) (collecting cases); *see also Eversole v. Steele*, 59 F.3d 710, 716 (11th Cir. 1996) (holding that "RUFF Drug Task Force was simply a multi-jurisdictional effort of law enforcement agencies joined together in a coordinated effort to stop or at least control drug activity" and not a suable entity). The Sixth Circuit has not yet decided this question. *See Rhea v. W. Tenn. Violent Crime & Drug Task Force*, 825 F. App'x 272, 275 (6th Cir. 2020) (declining to address whether intergovernmental task force was unincorporated association and deciding case on other grounds). District courts within the Sixth Circuit, however, regularly follow the public-private distinction in applying Rule 17(b) to interjurisdictional drug task forces.

For example, in *Bowles v. City of Mansfield*, 2010 WL 3860938, *5–*12 (N.D. Ohio Sept. 30, 2010), and *Rush v. City of Mansfield*, 771 F. Supp. 2d 827, 837–846 (N.D. Ohio 2011), the Northern District of Ohio considered the status of the Allied Special Operations Response Team (ASORT), "a tactical team formed by the Richland County[, Ohio,] Chiefs of Police Association." *Bowles v. City of Mansfield*, No. 1:07-CV-2276, 2009 WL 6903813, at *1 n.1 (N.D. Ohio July 10, 2009), *report and recommendation adopted as modified*, 2010 WL 3860938 (N.D. Ohio Sept. 30, 2010); *see also Rush*, 771 F. Supp. 2d at 837. Employing a similar analysis in both cases, the court found determinative that ASORT "was formed by a private social organization and is governed to some extent by that private social organization." *Rush*, 771 F. Supp. 3d at 838; *Bowles*, 2010 WL 3860938, at *6. This was, it found, "a marked departure from the usual structure for

15

multijurisdictional law enforcement agencies or teams." *Rush*, 771 F. Supp. 3d at 838; *Bowles*, 2010 WL 3860938, at *6. The court found that "[t]he suggestion that a private social organization could form a SWAT-type team that would be immune from suit certainly goes against the original intent behind § 1983, which was enacted to allow recourse against a private 'law enforcement entity whose policies, practices, and procedures deprived citizens of their civil rights." *Rush*, 771 F. Supp. 3d at 841; *Bowles*, 2010 WL 3860938, at *9. ASORT urged the court to find that Rule 17(b) does not extend to "government units." *Rush*, 771 F. Supp. 3d at 846; *Bowles*, 2010 WL 3860938, at *7. The court found doing so unnecessary because it determined that ASORT was "not a government entity, meets the definition of an unincorporated association under Rule 17(b)(3)(A), and is not somehow shielded from suit by Ohio law." *Rush*, 771 F. Supp. 3d at 839; *Bowles*, 2010 WL 3860938, at *13. ASORT was a proper defendant to the plaintiff's § 1983 claims. *Rush*, 771 F. Supp. 3d at 839; *Bowles*, 2010 WL 3860938, at *13.

In *Rhea v. Brown*, the Western District of Tennessee considered whether the West Tennessee Violent Crime & Drug Task Force was subject to suit under the Fair Labor Standards Act. 334 F.R.D. 138, 143–147 (W.D. Tenn. 2019). The court agreed with "the courts that have found intergovernmental task forces and governmental entities not to constitute 'unincorporated associations.'" *Id.* at 146. It found that the West Tennessee Violent Crime & Drug Task Force "was created pursuant to Tennessee state statute and reported directly to the District Attorneys General of the State of Tennessee," distinguishing the Task Force from ASORT, which "was created by and governed by a *voluntary, private* police organization, rather than by the municipalities and police departments from which ASORT members came." *Id.* The court also noted the Eastern District of Tennessee's finding in *Lamb v. Tenth Judicial District Task Force*, that "many courts do not extend [the unincorporated association provision of Rule 17(b)] to

'governmental units' and determine a government entity's capacity to be sued under the law of the state." 944 F.Supp.2d 586, 594 n.6 (E.D. Tenn. 2013). *Lamb*, in turn, noted this Court's finding in *Haines v. Metropolitan Government of Davidson County, Tenn.*, that, "[p]ursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of a governmental corporation to be sued in federal court is governed by the law of the state in which the entity was organized . . . 'Political subdivisions of a state or local government have capacity only if the law creating them recognizes them as separate legal entities having capacity to sue or be sued.'" 32 F.Supp.2d 991, 994 (quoting 4 James W. Moore, *Moore's Federal Practice* § 17.26[3], at 17–111 (3d ed. 1997)).

The decisions of district courts within the Sixth Circuit that have considered the status of interjurisdictional drug task forces under Rule 17(b) thus appear to reach a consensus that task forces that can be termed governmental units generally will not be considered unincorporated associations under Rule 17(b); task forces created by private actors generally will.[3] *But see Matje v. Leis*, 571 F. Supp. 918, 924 (S.D. Ohio 1983) (noting that court had previously found, in the context of an unpublished motion to dismiss, "that [the Regional Enforcement Narcotics Unit] may

---

[3]     District courts outside the Sixth Circuit largely follow the same rule. *See, e.g.*, *Thomas v. Cannon*, No. 3:15-CV-05346, 2017 WL 2402791, at *5–6 (W.D. Wash. June 1, 2017) (granting summary judgment to multi-governmental cooperative Metro SWAT Team because SWAT team was not unincorporated association under Rule 17(b)); *Plemons v. Amos*, No. 2:03-CV-421, 2006 WL 1710415, at *7 (N.D. Tex. June 22, 2006) (granting motion for summary judgment of intergovernmental task force because it was not an unincorporated association under Rule 17(b)), aff'd, 306 F. App'x 160 (5th Cir. 2009). *See also Franklin v. City of St. Louis*, No. 4:15-CV-01283, 2016 WL 2986373, at *3–4 (E.D. Mo. May 24, 2016) (dismissing claims against temporary multi-governmental law enforcement cooperative after finding that entity was not an unincorporated association under Rule 17(b)). These decisions are consistent with other courts' findings that other types of government entities are not unincorporated associations due to their public nature. *See, e.g.*, *Kivalina Relocation Plan. Comm. v. Teck Cominco Alaska, Inc.*, 227 F.R.D. 523, 526–527 (D. Alaska 2004) (finding that multi-governmental planning committee was not an unincorporated association), aff'd, 141 F. App'x 650 (9th Cir. 2005). *See also Mason v. Clayton Cnty. Bd. of Educ.*, No. 1:06-CV-2761, 2007 WL 9702135, at *2 (N.D. Ga. Apr. 5, 2007) (finding that as a government unit, a school board is not an unincorporated association).

17

properly be sued as an unincorporated association since plaintiffs are seeking to enforce 'against it a substantive right existing under the Constitution or laws of the United States.'") (quoting Fed. R. Civ. P. 17(b)(1)).

Here, the Drug Task Force is created under the authority of state law, Tenn. Code Ann. §§ 8-7-110, 12-9-101, *et seq.* Its members are local governments. (Doc. No. 90-3.) Its board of directors is comprised of "the chief law enforcement officer for each city and/or county within the 18th Judicial District that is a party to" the Interlocal Agreement and the District Attorney General for the 18th Judicial District. (*Id.*at PageID# 510–511.) Officers assigned to the Drug Task Force remain employees of the law enforcement agency making the assignment for purposes of compensation and benefits. (Doc. No. 90-3.) It thus appears that the Drug Task Force is a public entity and should not be considered an unincorporated association for purposes of Rule 17(b). *Cf. Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F3d 916, 922 n.6 (finding OPEC to be private entity and, thus, an unincorporated association under Rule 17(b) because, "[w]hile its members are sovereign nation states rather than private individuals, OPEC is not a governmental unit or subdivision and is not incorporated under the laws of any one Member State").

The Drug Task Force lacks the legal capacity to be sued under Tennessee law or as an unincorporated association under Rule 17(b).[4] Accordingly, summary judgment is appropriate on Burley's claims against it.

---

[4]    This Court and others have been clear that this finding does not mean that plaintiffs wronged by a drug task force's actions have no legal recourse. *See Timberlake*, 786 F. Supp. at 683–684 (finding that task force is not a legal entity but suit may be actionable against the entities comprising the task force); *Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995) (finding that the task force's "actions are not beyond judicial review . . . . [i]f . . . [the task force] is designed to function as an informal association of various governmental entities setting joint policies and practices for conducting drug investigations and raids, its component members may be sued and may be subject

### C. Burley's Section 1983 Claims Against Sumner County

To prevail on a claim under Section 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). A government entity "can be found liable under § 1983 . . . where the [entity] itself causes the constitutional violation at issue" through execution of its own policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694– 95 (1978)). The overarching question in resolving such claims is "whether there is a direct causal link between [the entity's] policy or custom and the alleged constitutional deprivation." *Id*.

Courts in this circuit engage in a two-pronged inquiry when considering municipal liability claims under Section 1983. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (quoting *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004)); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 505 (6th Cir. 1996) (explaining that "[a] municipal liability claim . . . must be examined by applying a two-pronged inquiry"). "We first ask whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law." *Powers*, 501 F.3d at 607 (first citing *Cash*, 388 F.3d at 542; and then citing *Alkire*, 330 F.3d at 813). Second, we ask whether the defendant entity is "responsible for that deprivation." *Cash*, 388

---

to joint and several liability for any constitutional violations."); *Franklin*, 2016 WL 2986373, at *4 (finding that temporary task force was not legal entity but that task force's component members were subject to suit); *Thomas*, 2017 WL 2402791, at *4–6 (dismissing task force but allowing suit to continue against municipalities comprising task force). *See also Brown,* 255 F.3d at 478 n.2 (8th Cir. 2001) (affirming conclusion that task force is not a legal entity while stating in footnote that "[p]erhaps the action could be re-filed directly against the five governmental entities whose agreement created the Task Force . . . . [w]e express no view on that question.")

F.3d at 542 (citing *Doe*, 103 F.3d at 507); *cf. Powers*, 501 F.3d at 607 (asking "whether the alleged deprivation was caused by the defendants . . .").

### 1. Assertion of a Constitutionally Protected Right

Under the first prong of a municipal liability analysis, courts must consider whether the plaintiff has asserted "rights [that] are federally protected such that, if proven, § 1983 will provide relief for their infringement." *Powers*, 501 F.3d at 607; *see also Cash*, 388 F.3d at 542 ("First, the court must determine whether the plaintiffs have asserted the deprivation of a constitutional right." (citing *Doe*, 103 F.3d at 505)). Importantly, this prong of the inquiry asks the court to "examin[e] the nature of the right claimed to have been infringed upon" and not to determine the merits of the claim. *Doe*, 103 F.3d at 506; *see also Cash*, 388 F.3d at 542 ("The threshold question is 'whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property.'"). Burley claims that Sumner County has a custom of allowing Drug Task Force agents to use invalid warrants to seize property in violation of the Fourth Amendment and a custom of failing to store seized property safely in violation of the Fifth Amendment. (Doc. No. 29.)

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 543 (6th Cir. 2002). That protection extends to forfeitures. *Austin v. United States*, 509 U.S. 602, 608 n.4 (1993) ("[T]he Fourth Amendment's protection against unreasonable searches and seizures applies in forfeiture proceedings . . . ."). Considering a case in which a Tennessee General Sessions Court judge sitting in Franklin County issued a warrant to search a property in Coffee County, the Sixth Circuit has held that, "'when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio*'" and execution of that warrant violates the Fourth Amendment. *United States v. Master*, 614 F.3d 236, 239 (6th Cir. 2010) (quoting *United States v. Scott*, 260 F.3d 512,

515 (6th Cir. 2001)). "State law determines what person is allowed to approve what warrant." *Id.* at 240. In Tennessee, the jurisdiction of a circuit court judge is confined to the geographical boundaries of the judge's district unless the judge has other lawful means of exercising expanded jurisdiction. *State v. Frazier*, 558 S.W.3d 145, 151 (Tenn. 2018). Burley has thus asserted a right protected by the Fourth Amendment in arguing that the warrant to seize his property was improperly issued.

Because Burley's due process claim addresses the actions of state officials, the Fourteenth Amendment's due process clause, not the Fifth Amendment's, applies. *Palmer v. Schuette*, 768 F. App'x 422, 426–27 (6th Cir. 2019). Under the Fourteenth Amendment, Burley has a constitutionally protected property interest in his personal property. *Cash*, 388 F.3d at 542. To succeed on a Fourteenth Amendment procedural due process claim, Burley "must show (1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he or she was not afforded adequate procedures." *Paterek v. Vill. of Armada*, 801 F.3d 630, 649 (6th Cir. 2015) (citing *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir.2014)). The Sixth Circuit "often has sought to place procedural due process suits into two categories: 'those involving a direct challenge to an established state procedure' and 'those challenging random and unauthorized acts.'" *Daily Servs.,* 756 F.3d at 907 (quoting *Mertik v. Blalock*, 983 F.2d 1353, 1365 (6th Cir. 1993)). "'Unauthorized' actions . . . occur when the official in question lacks the broad power or authority to effect the deprivation." *Id.* at 909. When a plaintiff alleges a violation of due process through an unauthorized action, "'postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide'; 'no matter how significant the private interest at stake and the risk of its erroneous deprivation, the State cannot be required constitutionally to do the impossible by

providing predeprivation process.'" *Id.* at 905 (quoting *Zinermon v. Burch*, 494 U.S. 113, 128, 129 (1990)).

Burley asserts the unauthorized seizure of his property. Accordingly, "pre-deprivation process is impossible and, therefore, adequate post-deprivation state procedures comport with the constitutional requirements of due process." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (discussing *Parratt v. Taylor*, 451 U.S. 527 (1981)). Burley, the Drug Task Force, and Sumner County agree that Burley used state post-deprivation procedures to successfully challenge the seizure. Burley regained his property when the Davidson County Chancery Court ruled that the Sumner County Circuit Court lacked jurisdiction to issue the forfeiture warrants and ordered the seized property to be returned to Burley. (Doc. No. 90-1.) After being notified by Burley's lawyer of the state court decision, the Drug Task Force arranged to have Burley's property returned. (Doc. No. 91.) Because Burley has not asserted that the state's post-deprivation process was inadequate, he has not asserted a violation of his constitutionally protected right to due process under the Fourteenth Amendment.

The Court will proceed to the second prong of the inquiry only as to Burley's claim that Sumner County violated his Fourth Amendment rights.

### 2. Sumner County's Policies or Customs

Under the second prong of the municipal liability inquiry, a plaintiff "must 'identify the policy, connect the policy to the [municipal entity] itself and show that the particular injury was incurred because of the execution of that policy.'" *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may show the existence of a policy or custom that is actionable under § 1983 in four ways:

The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citations omitted). "The Sixth Circuit applies specific inquiries for . . . claims based on each theory to determine whether plaintiffs have identified a custom or policy, connected the policy to the defendant . . . entity, and shown that the custom or policy was the moving force behind the alleged injury as required." *Whitworth v. CoreCivic, Inc.*, No. 3:17-CV-01121, 2019 WL 1427934, at *13 (M.D. Tenn. Mar. 29, 2019).

Burley alleges that Sumner County has a custom of allowing Drug Task Force agents to use invalid warrants to seize property. (Doc. No. 29.) Burley thus asserts an "inaction theory" of municipal liability "where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched." *Thomas*, 398 F.3d at 429. To prevail on an inaction theory, a plaintiff must show:

(1)     the existence of a clear and persistent pattern of illegal activity;

(2)     notice or constructive notice on the part of the defendant;

(3)     the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4)     that the defendant's custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Id*. (alterations omitted) (quoting *Doe*, 103 F.3d at 508); *see also Milligan v. United States*, 644 F. Supp. 2d 1020, 1040 n.13 (M.D. Tenn. 2009) (citing *Thomas*, 398 F.3d at 429).

To show a "clear and persistent pattern of illegal activity," Burley has provided materials that he argues show that Sumner County judges issued forfeiture warrants for property located outside their jurisdiction in 2019 and 2021. (Doc. No. 94.) The first document is an incomplete

and undated memorandum apparently issued by Drug Task Force Director Kelly Murphy. (*Id.*) The memorandum identifies Burley's wife as Sze Ka Joyce Chan and states that, in recorded telephone conversations from the Sumner County Jail, Burley "apologized to Mrs. Chan for doing this again" and Chan responded that she "was worried Law Enforcement was going to seize her house and criminally charge her as well." (*Id.* at PageID# 546.) Burley has circled a paragraph in the memorandum which states that, "[o]n 04/30/2019, a search warrant was executed on Mrs. Chan's safety deposit box . . . in Nashville, Davidson County, TN [which had been] kept frozen since all the accounts were frozen on 02/08/2016." (*Id.*) The document does not identify the judge who issued the search warrant or the judge's jurisdiction. (Doc. No. 94.) It therefore does not support a finding that Sumner County had a custom of seizing property through invalid search warrants.

Burley also includes two writs of attachment and seizure issued by a judge of the Sumner County Circuit Court on June 21, 2021, authorizing Arnold to seize funds from bank accounts held by Burley at PNC Bank and Fifth Third Bank. (*Id.*) Burley also includes the seizure and forfeiture notices issued for these assets, which show that the banks were located in Sumner County. (*Id.*) In addition, Burley attaches a seizure notice executed by Arnold for nine pounds of marijuana and a 2017 Chevrolet Silverado seized from Burley in Sumner County. (*Id.*) Finally, Burley attaches seizure notices executed by Arnold for nine pounds of marijuana and $2,792.39 in currency seized from Burley in Wilson County, Tennessee, on April 1, 2021. (*Id.*) Burley provides no documentation to show that this seizure was authorized by a Sumner County judge.[5] These

---

[5]     The Drug Task Force and Sumner County also submitted an administrative decision relating to the April 2021 Wilson County seizure finding the seizure proper, though the decision also contains no information about the jurisdiction of the judge issuing the warrants. (Doc. No. 95-1.)

documents show that Burley has been the subject of several other seizures of his property by Arnold. None, however, supports a finding that the judge who authorized the seizures did so without authority and, thus, do not show a custom of Sumner County employing unlawful warrants to seize property.

"[A] plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference." *Thomas*, 398 F.3d at 433. Sumner County has shown the absence of a genuine issue of material fact that it engages in a custom of using unlawful warrants to seize property.

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion for summary judgment (Doc. No. 89) be GRANTED and Burley's motion for summary judgment (Doc. No. 94) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 30th day of December, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge